## WIER v. DAVIS AND HUMPHRIES.

1. In this State it is unlawful for an administrator to sell the personal estate of his intestate at private sale, and if such sale is made, it conveys no title to the purchaser.

2. A *bona fide* purchaser from an administrator, cannot be deprived of his possession in the property sold, bv an execution in favor of a creditor against the administrator, to be levied of the goods and chattels of his intestate in his hands, when the execution issues after the sale, although the sale itself is illegal. Such a sale, if accompanied with possession leaves *nothing in the* administrator but a mere right of action for the slave, and this is not the subject of levy or sale ; nor is the property itself in the possession of the purchaser subject to levy.

WRIT of Error to the Circuit Court of Pickens county.

Trial of the right of property to a slave under the statute. The slave was levied on the 10th October, 1840, as the property of the estate of David Archer, deceased, by an execution in favor of Davis and Humphries against Elizabeth Archer, administratrix of David Archer, deceased, commanding the sheriff to levy on the goods and chattels of the intestate in the hands of the administratrix. The lien of the execution attached on the 2d August of the same year.

This slave was claimed by Samuel Wier. At the trial it appeared the slave was in his possession, when the levy was made, and he made title through a purchase from one Fleming, who purchased from the administratrix of Archer, by a private sale, on the 1st of December, 1838. The consideration paid was about seven hundred dollars, which was applied in due course of administration.

It also appeared that the Orphans' Court of the proper county on the 9th October, 1838, made an order that the administratrix should have leave to sell the personal property of the decedent on a credit of six months. There was no evidence showing the sale to have been on a credit of six months—nor of any advertisement in conformity to the statute.

On this state of facts the claimant's counsel requested the Court to charge—

1. If Fleming purchased *bona fide*, upon a full and fair consideration, and this consideration was applied by the administratrix in due course of administration, then the slave could not be condemned to the plaintiff's execution, although the statutory requisitions had not been complied with.

2. If Wier, the claimant, purchased for a full and fair consideration, without notice, that the administratrix had not complied with the statutory requisitions in her sale to Fleming, then the property could not be condemned.

These charges were refused, and the jury were instructed, that unless the administratrix had complied with the statute, which directs the mode by which property of deceased persons shall be sold, no title was conveyed to the purchaser from her, by the sale, although his purchase was without fraud and for a fair consideration. The purchaser from the administratrix having acquired no title by the sale, if thus defective, could

convey none to the claimant, as against the plaintiff in execution.

The claimant excepted, as well to the charge given as those refused.

L. CLARK, for the plaintiff in error, insisted—

1. That the statutes requiring administrators to sell at public sale, and within certain hours, are directory merely. If the requisitions are not complied with, the sale is not void if without fraud. [2 Ala. Rep. N. S. 682.]

2. The administrator is the owner of the assets, and has power to dispose of them. [Story Comm. 543, §579; 2 Wms. on Ex. 609.]

3. Although the immediate vendee of the administratrix may not have got a good title, yet the claimant did. [1 Story Comm. 373, §381.[

4. Although the claimant may not have a good title against an administrator *de bonis non*, yet the sale cannot be avoided at the suit of a creditor, in the mode pursued. [Toll on Ex. 365; 3 Bacon, Title Ex. and Adm'r. 25, 26.

ELLIS, contra, relied on the statute, declaring it shall not be lawful for an administrator to sell at private sale. [Digest, 180, §13; Ventris v. Smith, 10 Peters, 161; 4 Cowen, 718; 8 Wend. 80; Colt v. Lanier, 9 Cowen, 320.]

GOLDTHWAITE, J.—1. Two questions grow out of this case; the first is, whether any title was gained by the purchaser under the sale made by the administratrix? The second is, whether, after such a sale, a creditor can levy an execution on the property in the hands of the purchaser?

The condition, rights and duties of an administrator under our statutes, and by the common law are widely different in many respects; but in none more so than those which regard the disposition of the personal property. By the common law his right to sell this species of property was limited only by his discretion; and a purchaser from him could only be held responsible when charged with notice of a devastavit. [See most of the cases collected in Colt v. Lanier, 9 Cowan, 321.] Our statutes, however, have interposed a complete bar to the

·exercise of any discretion by the administrator, with respect to the manner of disposing of most kinds of personal estate which ·belonged to the intestate. They· declare that it shall not be lawful for any executor, administrator or guardian, to take the estate at its appraised value, or to dispose of the same at private sale. The sale can only be made after an order of the Orphans' Court, and then only at public sale. This sale is not to commence before twelve o'clock, nor continue longer than the hour of five in the afternoon, of each day. All sales are declared to be null and void which may be commenced and held in any other manner. [Digest, 180, §13, 14.]

After such an emphatic declaration there is no room to doubt that the Legislature intended such sales should be of no validity whatever; and we cannot perceive there is any particular hardship in providing so strictly against the possibility of collusion between an administrator and a purchaser. The conclusive effect of this legislation on unauthorized sales was very fully considered in the case of Ventris v. Smith, [10 Peters, 161,] and the Supreme Court of the United States then held, under these identical statutes, that a private and unauthorized sale by an administrator in chief, did not have the effect to defeat the right of a subsequent administrator, *ad colligendum.*

We think it clear, that under these statutes the title of the property may, by proper proceedings, be subjected to the claims of creditors or distributees of the estate ; that this administratrix cannot maintain the action, is supposed to be settled by the case of Pistole v. Street, [5 Porter, 64.]

2. The other question is one of more difficulty, because the possession of this property was certainly adverse to all the world. It was held by the claimant under a *bona fide* purchase, not from the administratrix, but from one purchasing from her.

We have already shown that the title of the estate was not divested by the unauthorized sale, but though the title may yet be in the estate, it does not follow that a creditor can subject it to sale under an execution. We have never understood that an execution against the goods and chattels of any person could be so used as to transfer a mere title unaccompanied by the possession. It is obvious that such a rule would be liable to abuse from collusive arrangements, by which a person out of

possession, and with a doubtful title would substitute another in his place, clothed with the more imposing title of purchaser under a sheriff's sale. Added to this advantage, the possession itself would be changed by the seizure and transferred to the purchaser.

The relative condition of the parties would be entirely reversed and the unquestioned possession which before was held under a defective title, would be turned into a mere right of action. We apprehend it is well settled that the mere right of action of a defendant in execution to personal property, is not the subject of a levy. [Commonwealth v. Abel, 6 J. J. Marsh. 476; Thomas v. Thomas, 2 Marsh. 430, and cases there cited.]

We have heretofore held that the ower of a mere right of action to personal property, could not transfer this right to another, so as to authorize a suit in the name of the purchaser. [Goodwin v. Lloyd, 8 Porter, 237; Brown v. Lipscomb, 9 Porter, 472.] The chief objection which can be urged against the rule we have stated as settled, is, that an adverse possession may sometimes be simulated; but a reference to the case last decided will show that the *bona fides* of the adverse claim is always a question for the decision of the jury, and where this essential ingredient is wanting, the transfer, whether by sale or by execution will be operative.

The propriety of the rule cannot be better illustrated than by the facts of this case. The sale is illegal, and passes no title, but the purchase money is received and appropriated by the administratrix in due course of administration. It is therefore by no means improbable that the plaintiffs in execution have themselves received a portion of the sum derived from the sale. If suit should be hereafter brought, by a subsequent administrator, to recover this slave, it scarcely admits of question, that in equity, the purchaser would be permited to show the application of the purchase money, in due course of administration; and to charge the same as a trust fund, to be first reimbursed out of the proceeds of the slave. The same equity would doubtless be allowed if these creditors were seeking to charge the slave, by bill in Chancery, instead of an execution. Neither a subsequent administrator, distributees or creditors, can claim more than to have the slave sold according to law,

and its proceeds applied in due course of administration, and if a portion of the proceeds has been applied in advance, their claim exists for the residue only. But if the present judgment is to be supported, none of these just rules can be applied, and the creditors might receive not only the sum raised by the sale of the slave under their execution, but also, a portion of the price paid by the purchaser to the administratrix.

Our conclusion is, that the Circuit Court should have given the second charge requested by the claimant, as it sufficiently placed before the jury the proper question to be decided by them, under the circumstances in proof. The matter to be determined by them was, the *bona fide* character of the claimant's possession, under his purchase, and in this aspect it was entirely immaterial whether the administratrix had pursued the requisitions of the statutes in the sale of the slave.

Judgment reversed and the cause remanded.